[No. 44705.   En Banc.   August 28, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL CHARLES GREEN, *Appellant.*

218

*Timothy K. Ford, Smith, Kaplan, Withey, Ford, Theiler & Sowa, John Strait,* and *Anthony Savage, Jr.,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *J. Robin Hunt, Deputy,* for respondent.

STAFFORD, J.—Michael Charles Green petitions this court for reconsideration of our decision in *State v. Green,* 91 Wn.2d 431, 588 P.2d 1370 (1979) (*Green* I) on three major issues: (1) our ruling that a statement made by appellant was not the product of custodial interrogation in violation of *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966); (2) our ruling that the State did not possess unfettered discretion under RCW

RCW 9A.32.045(7)[1] and .030(1)(c)(2) and (5) to seek varying degrees of punishment for different persons who commit identical crimes thus violating equal protection of the law; and (3) our disposition of the issues raised by an allegation that appellant committed aggravated murder in the first degree in the furtherance of first degree kidnapping (kidnapping) or first degree rape (rape). For the reasons set forth in *Green I* we adhere to our original disposition of the *Miranda* and equal protection issues. We depart from *Green I*, however, after reconsidering the issue of kidnapping as an element of aggravated first degree murder as defined by Initiative 316, § 2. After considering the evidence most favorable to the State, we conclude there is not substantial evidence to support a determination of kidnapping. This conclusion is also compelled by the recent decision of the United States Supreme Court, *Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). Moreover, the nature of the verdict form in this case makes it impossible for us to know if the jury was unanimous in determining whether aggravated first degree murder was committed in the furtherance of kidnapping *or* rape. Therefore, the charge of aggravated first degree murder must be remanded, based as it is on the remaining element of first degree rape or attempted first degree rape.

Pursuant to RCW 9A.32.045(7), the charge of aggravated murder in the first degree must be established by proving beyond a reasonable doubt that appellant caused the victim's death in the course of or in the furtherance of rape (RCW 9A.44.040), or kidnapping (RCW 9A.40.020). While rape and kidnapping are elements of aggravated murder in the first degree, each is a separate and distinct major crime having specific elements which also must be proved beyond a reasonable doubt. Thus, the initial question is whether those separate and distinct crimes, or either of them, have

---

[1]RCW 9A.32.045, Initiative 316, § 1 and Laws of 1975, 2d Ex. Sess., ch. 9, § 1, as referred to in this opinion, have been revised by Laws of 1977, 1st Ex. Sess., ch. 206, § 4, p. 776.

been established under either the substantial evidence test or the reasonable doubt test of *Jackson v. Virginia, supra.*

In dealing with the claimed inadequacy of proof to establish the elements of kidnapping, *Green* I held, at page 442: "[r]eview of the sufficiency of evidence is *limited* to a determination of whether the State has produced *substantial* evidence tending to establish circumstances from which a jury could reasonably infer the fact to be proved." (First italics ours.) Then, after citing *State v. Randecker,* 79 Wn.2d 512, 487 P.2d 1295 (1971), *Green* I held: "[i]n determining whether the necessary quantum of evidence exists, *it is unnecessary for the [reviewing] court to be satisfied of guilt beyond a reasonable doubt.* It is only necessary for it [the reviewing court] to be satisfied that there is *substantial evidence to support* the State's case or the *particular element* in question." *State v. Green, supra* at 442–43. (Italics ours.) Thereafter *Green* I reviewed the evidence and concluded substantial evidence existed from which the jury could have inferred appellant killed the victim in the course of or in furtherance of kidnapping, a conclusion with which we now disagree after more careful reflection.

■ There is, however, an even more salient reason for departing from our view in *Green* I. Shortly after the publication of *Green* I, the United States Supreme Court held in *Jackson v. Virginia, supra,* that on review the proper test is whether there was sufficient evidence to justify a rational trier of fact to find guilt beyond a *reasonable doubt.*[2] "After *Winship* [*In re Winship,* 397 U.S. 358, 25 L.

---

[2]The fact that *Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979) is concerned with a habeas corpus proceeding in federal district court does not undermine its impact on the instant case. *Jackson* was concerned with a petitioner convicted of first degree murder in a state court. His motions and petitions in the state system to set aside his conviction on the ground of insufficient evidence were denied. His next step was to seek relief in federal district court by means of habeas corpus. The only difference between that case and the one at hand is that here, appellant is still seeking his final remedy in the state court and we still have the opportunity to apply the proper remedy declared by *Jackson.* If we fail to do so, however, the next step will be that discussed at length in *Jackson.* The California Court of Appeals, Second Appellate District, held as we did in

Ed. 2d 368, 90 S. Ct. 1068 (1970)] the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support *a finding of guilt beyond a reasonable doubt.*" *Jackson v. Virginia, supra* at 318. (Italics ours.) This inquiry does not require the reviewing court to determine whether *it* believes the evidence at trial established guilt beyond a reasonable doubt. "Instead the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.*" *Jackson v. Virginia, supra* at 319. (Italics ours.) The criterion impinges upon a jury's discretion only to the extent necessary to protect the constitutional standard of reasonable doubt. As pointed out in *Jackson* at page 320, a lesser standard would fail "to supply a workable or even a predictable standard for determining whether the due process command of *Winship* has been honored."

Accordingly, the appropriate test for determining the sufficiency of the evidence of kidnapping is *not* that applied in *Green* I, *i.e.,* whether, after viewing the evidence most favorable to the State, there is substantial evidence to support kidnapping. The issue, as framed in *Jackson v. Virginia, supra,* is whether, after viewing the evidence most favorable to the State, *any rational trier of fact* could have

---

*Green* I, that in reviewing a criminal conviction on appeal, a reviewing court need only determine whether the record contains *substantial evidence* to support the finding of the trier of fact. The dissent made it clear the majority, acting as we did in *Green* I, did not mandate that the reviewing court require that guilt be established beyond a reasonable doubt. *In re Leonard M.,* 85 Cal. App. 3d 887, 149 Cal. Rptr. 791 (1978). The United States Supreme Court vacated the judgment and remanded the case in light of *Jackson v. Virginia, supra. Leonard v. California,* 443 U.S. 914, 61 L. Ed. 2d 878, 99 S. Ct. 3105 (1979). On remand the California Court of Appeals, 2d App. Dist., acknowledged, as we do here, that *Jackson v. Virginia, supra,* required it to determine whether, on the whole record, a rational trier of fact could have found guilt beyond a reasonable doubt. *In re Leonard M.,* ___ Cal. App. 3d ___, 160 Cal. Rptr. 631 (1979). In a similar vein *see Moore v. Duckworth,* 443 U.S. 713, 61 L. Ed. 2d 865, 99 S. Ct. 3088 (1979).

found the essential elements of kidnapping *beyond a reasonable doubt.*

The *Green* I "substantial evidence" rule of review cannot be equated with *Jackson*'s "reasonable doubt" rule. The clear statement of the rule employed by *Green* I precludes our holding that the "substantial evidence" rule of review and the "reasonable doubt" rule of review are the same albeit differently stated. Numerous cases following *Randecker,* including *Green* I, have reiterated and relied upon the obvious difference. Nevertheless, despite the clear difference we hold the evidence is insufficient to meet *either* rule of review.

In order to determine whether the facts pertaining to kidnapping satisfy either the substantial evidence test or the more rigorous *Jackson* test, it is necessary to review the facts surrounding the victim's death. The examination must be made in a manner as devoid of subjective reactions, argument or comment as possible.

Shortly before 4 p.m. on September 28, 1976, Kelly Emminger, an 8 1/2–year–old girl, took a younger child for a walk in the Capital Hill area of Seattle. They headed down an alley adjacent to the apartment house where both lived. At approximately 5 p.m., witnesses both within and without the apartment heard screams coming from the alley. At first the sounds were disregarded as the noise of children playing. Within 15 seconds of the first scream, however, Barry Miners, a resident of the apartment, looked from his second story balcony and saw two people almost directly below him. They were huddled on the sidewalk bordering the alley. He recognized one as Kelly, the other was an adult male with shoulder–length brown hair. As Kelly screamed and kicked, the man lifted her from behind and was observed to place his hand over her mouth in an apparent attempt to silence her. At that time Kelly was fully clothed.

Mr. Miners watched the man carry Kelly a short distance to his right, along the sidewalk, before they disappeared

around the corner toward the back of the apartment. The screams ceased within moments after they passed from view. Mr. Miners went to a window overlooking the sidewalk toward which the man and Kelly had moved but saw and heard nothing further. He returned to the balcony and directly below, where the pair had huddled, he saw a butcher knife lying in one of two adjoining pools of blood.

Mr. Miners left his apartment and ran down the back stairs from the second floor. As he reached the stair landing above the apartment's exterior loading area,[3] he observed some blood on the carpet below him. He also saw the man near the bottom of the stairs, holding Kelly. They were about 8 feet away, near the entrance to the exterior loading area. Kelly was quiet and very pale. Although she was clearly unconscious, Mr. Miners was not sure whether she was dead. Her clothing, from the middle part of her body to her ankles, had been ripped away. The man's clothing was covered with blood.

Mr. Miners asked the man whether help was needed and he replied "yes, she's been hurt pretty bad. Call an ambulance." Mr. Miners departed to summon aid and was gone about 1 minute. Upon his return he found the man had moved Kelly to the lawn in back of the apartment building. At that point Miners felt sure she was dead. He later identified the man as appellant Green.

In setting the scene for the foregoing events we also note the incident began on the sidewalk in front of the ground-level apartment occupied by Herman Tower and his parents. Kelly screamed and as Herman looked out the window he saw Green, not more than 10 feet away, lift Kelly off her feet and carry her kicking and screaming toward the corner of the apartment building. She ceased screaming as she and Green disappeared from view around the corner. As

---

[3]The apartment's exterior loading area is an alcove with no exterior door and is visible from the outside. The apartment's first floor rear exit, or fire door, opens into one end of the exterior loading area and the back stairs from the upper floors terminate at one side of the loading area. All are visible from the outside.

Herman exited his apartment, he saw the two pools of blood and the butcher knife on the sidewalk near his door.

Within the same time span, Tania Thorkelson, age 8, was in the grass–covered backyard of the apartment. She was playing on a tire swing hung from a tree located near the apartment's exterior loading area where Miners later found Green and Kelly. Tania heard some screams, ran from the swing to the corner of the apartment building, peeked around the corner and saw Kelly struggling with Green on the sidewalk. She also saw Green pick Kelly up. Apparently Tania then ran to some garages across the alley.

While the foregoing recitation of events is lengthy, it must be understood that only 2 to 3 minutes elapsed from the time of the first scream to the time Miners found Kelly in Green's arms in the exterior loading area. It should also be noted that in *Green I* the court and the prosecuting attorney placed some emphasis on the fact that the victim had been moved a number of feet from the point of initial encounter. Careful review of the exhibits and report of proceedings reveals, however, the extent of the movement was only a short distance.[4]

## I
### FAILURE OF EVIDENCE TO PROVE ESSENTIAL ELEMENTS OF FIRST DEGREE KIDNAPPING UNDER *JACKSON V. VIRGINIA*

■ As indicated above, kidnapping is a specific element of aggravated murder in the first degree. It is, however, a separate and distinct statutory crime having specific elements each of which must be established beyond a reasonable doubt. Unchallenged instruction No. 9 defines the essential elements of statutory kidnapping as follows:

A person commits the crime of kidnapping in the first degree when he intentionally *abducts* another person

---

[4]While the actual number of feet the victim was moved is not clear, the prosecuting attorney characterized it as "20, 30, maybe 50 feet from where . . . [the assailant] originally accosted her." From the testimony and exhibits most favorable to the State, it would not have been in excess of 50 to 60 feet.

with intent to facilitate the commission of any felony or flight thereafter.

> *"Abduct" means to restrain* a person by either
> (a) *secreting or holding* her in a place *where she is not likely* to be found, or
> (b) *using* or *threatening* to use *deadly force.*

> *"Restraint"* means to *restrict a person's movement without consent* and without legal authority *in a manner which interferes substantially with her liberty.*

> *Restraint* is "without consent" if it is *accomplished* by
> (a) *physical force, intimidation,* or deception, or
> (b) *any means* including acquiescence of the victim, *if she is a child less than sixteen years old when the parent* or other lawful guardian *has not acquiesced.*

(Italics ours.) RCW 9A.40.010(2) and .020.

From the foregoing, it is clear "abduction" is a critical element in the proof of kidnapping. There are three distinct bases upon which the State may rely to establish "abduction", each of which necessarily involves "restraint": (1) *restraint* by means of *secreting* the victim in a place where he or she is not likely to be found; (2) *restraint* by means of a *threat* to use deadly force; and (3) *restraint* by means of *deadly force other than the killing itself.* The State would add a fourth, *i.e., restraint* supplied *by the killing itself.* Each of the four bases is examined more fully below.

■ In considering kidnapping by any of the four means set forth above it is important to note that each is wholly separate and distinct from the others. RCW 9A.40.010(1), (2)(a), (b); RCW 9A.40.020. While each requires *restraint* and at least the first three ultimately may support a charge of kidnapping, the specific means comprising restraint in one are not interchangeable with the specific means required to establish any of the others. Each must be independently proved and none can stand upon a combination of the others to fill a critical void.

A. *Restraint by means of secreting the victim.*

In determining whether there is sufficient evidence of restraint by means of secreting the victim under either the

substantial evidence or the *Jackson* test, the setting of events and the physical surroundings must be examined carefully. The area where the State asserts the victim was "secreted", *i.e.,* the apartment's exterior loading area, had no outside doors, was visible from the children's play area and a tire swing located only about 30 feet away, and could be viewed from the rear windows of another apartment only about 40 feet distant. In short, the exterior loading area was plainly visible from the outside. Additionally, the apartment's first floor rear exit, or fire door, opened into one end of the exterior loading area only a few feet from where Mr. Miners observed Green and the victim. This door provided additional public access to the area. Further, the place where Green and the victim were found was near the bottom of the back stairway which led to all of the upstairs apartments. This stairway was used in common by the occupants of and visitors to the apartments. Finally, at best, a total of only 2 to 3 minutes elapsed from the time the victim first screamed to the time Mr. Miners reached the exterior loading area and actually saw Kelly in Green's arms.

Considering the unusually short time involved, the minimal distance the victim was moved (estimated variously, by the prosecuting attorney, as from 20 to 50 feet), the location of the participants when found, the clear visibility of that location from the outside as well as the total lack of any evidence of actual isolation from open public areas, there is no substantial evidence of restraint by means of secreting the victim in a place where she was not likely to be found. Further, under the *Jackson* test, no rational trier of fact could have found *beyond a reasonable doubt,* that the victim had been restrained by means of *secreting* her in a place *where she was not likely to be found.* Under either test it is clear Green could hardly have chosen a more public place to accost his victim or commit the homicide some 2 to 3 minutes later.

■ Moreover, although appellant lifted and moved the victim to the apartment's exterior loading area, it is clear

these events were actually an integral part of and not independent of the underlying homicide. While movement of the victim occurred, the mere *incidental* restraint and movement of a victim which might occur during the course of a homicide are not, standing alone, indicia of a true kidnapping. *See State v. Johnson,* 92 Wn.2d 671, 676, 600 P.2d 1249 (1979).

Although we characterize the movement and restraint in this case as *incidental,* we do not mean to suggest that under every conceivable set of facts a movement of 20 to 50 feet or being found in a stairwell would be *incidental.* That which constitutes *incidental* movement is not solely a matter of measuring feet and inches. It is a determination to be made under the facts of each case, in light of the totality of surrounding circumstances. This characterization is as much a consideration of the relation between the restraint and the homicide as it is a measure of the precise distance moved or place held. It involves an evaluation of the nature of the restraint in which distance is but one factor to be considered.

As stated by the Michigan Court of Appeals in *People v. Adams,* 389 Mich. 222, 236, 205 N.W.2d 415 (1973) in referring to a case of assault:

"We have concluded that under the kidnapping statute a movement of the victim does not constitute an asportation unless it has significance independent of the assault. And, unless the victim is removed from the environment where he is found, the consequences of the movement itself to the victim are not independently significant from the assault—the movement does not manifest the commission of a separate crime—and punishment for injury to the victim must be founded upon crimes other than kidnapping."

New York has taken a similar view of the merging of a technical "kidnapping" when that "kidnapping" is merely incidental to the commission of another crime. *People v. Cassidy,* 40 N.Y.2d 763, 358 N.E.2d 870, 390 N.Y.S.2d 45 (1976); *People v. Levy,* 15 N.Y.2d 159, 164, 204 N.E.2d 842, 256 N.Y.S.2d 793, *cert. denied,* 381 U.S. 938, 14 L. Ed. 2d

701, 85 S. Ct. 1770 (1965). *See also State v. Johnson, supra.*

We hold that kidnapping by means of secreting or holding the victim in a place where she was not likely to be found has not been established either by substantial evidence or by the standard of proof required by *Jackson v. Virginia, supra.*

B. *Restraint by means of a threat to use deadly force.*

A careful review of the record discloses no evidence that Green employed a *threat* to use deadly force as required by instruction No. 9 and RCW 9A.40.010(2)(b). Thus, we conclude there is no substantial evidence of that means and also conclude no rational trier of fact could have found beyond a reasonable doubt that the victim had been restrained in that manner, as required by *Jackson.*

C. *Restraint by means of deadly force other than the killing itself.*

Our review of the evidence discloses no evidence of restraint by deadly force *other* than the stabbing of the victim. While the record indicates Green lifted the victim and carried her to the exterior loading area, such conduct, without more, does not amount to the use of deadly force. We are compelled to conclude there is no evidence of restraint by means of deadly force other than that employed in the ultimate killing. Thus kidnapping by means of deadly force *other* than that employed in the ultimate killing has not been established by substantial evidence or by the standard of proof required by *Jackson.*

D. *Restraint supplied by the killing itself.*

Pursuant to instruction No. 9 and RCW 9A.40-.010(2)(b) the State may establish kidnapping if the victim is *restrained* by the use of *deadly force.* While it is clear in this case that deadly force was employed (*i.e.,* the killing itself), we conclude that "restraint" by an *ultimate killing* does not, in and of itself, establish kidnapping. RCW 9A.40.010(2)(b) contemplates employment of a deadly force

that stops short of actual homicide. When the State establishes a *killing* it may have proved a homicide or some other crime, but it has not established kidnapping.

In the broadest sense the infliction of a fatal wound is the ultimate form of "restraint" because it obviously "restrict[s] a person's movement . . . in a manner which interferes substantially with [the person's] liberty." RCW 9A.40.010(1). If such logic is applied to the law of kidnapping, however, *every* intentional killing would also be a kidnapping because the killing itself would supply the requisite "restraint" (*i.e.*, the killing being the ultimate form of "restraint"). Moreover, *every* intentional killing would *automatically* become murder in the first degree under RCW 9A.32.030(c)(5), which provides that one causing the death of another in the course of any kidnapping is automatically guilty of murder in the first degree. Most importantly, the intentional killing, converted thusly into first degree murder, would in turn *automatically* be converted into *aggravated* murder in the first degree under RCW 9A.32.045(7) because it was committed in the course of a kidnapping.

Clearly Initiative 316 was intended to identify those crimes which are particularly outrageous, to enhance the degrees of culpability and to elevate the status of such crimes. There is nothing to indicate, however, that the people of this state intended to employ the kidnapping statute in such a convoluted way as to eliminate all distinction among intentional killings. On the contrary, the initiative carefully set out seven specific circumstances in which a first degree murder could be elevated into a crime punishable by death. It did not, either specifically or by inference, indicate that its purpose was to automatically convert every intentional killing into aggravated murder in the first degree punishable by death. Thus, we are compelled to conclude evidence of the killing itself does not establish the "restraint" necessary to prove kidnapping based on restraint by the use of deadly force under RCW 9A.40-.010(2)(b).

It is evident from the foregoing analysis that the State has failed to establish the elements of kidnapping either by the substantial evidence test adopted in *Green* I or beyond a reasonable doubt as required by *Jackson*. Accordingly, one of the two critical grounds upon which the charge of aggravated murder in the first degree was based fails. If the charge of aggravated murder in the first degree is to stand, it must be based solely on the charge of first degree rape.

## II
### FAILURE OF THE TRIAL COURT TO INSTRUCT ON THE SUBJECT OF A UNANIMOUS VERDICT

At trial, the jury was instructed it could find Green guilty of aggravated murder in the first degree if convinced beyond a reasonable doubt that:

> defendant caused the death of Kelly Ann Emminger in the course of or in furtherance of rape in the first degree or kidnapping in the first degree[.]

Instruction No. 5. The jury subsequently returned a unanimous general verdict of guilty. The verdict form failed to provide, however, for a separate jury determination of whether the death occurred in the course of or in the furtherance of either rape or kidnapping, the critical elements of *aggravated* murder in the first degree.

Green contends that absent separate unanimous verdicts on each of the two possible elements of aggravated murder in the first degree it is impossible to determine whether the jury found unanimously that he committed either rape or kidnapping or both. He argues that such a determination is particularly critical if the element of kidnapping is ultimately rejected. He asserts that in such event there is no way to know whether the jury based its verdict upon a unanimous determination that he committed rape. That being the case, he contends the cause must be remanded for new trial on the issue of rape.

A. *Standing of appellant to raise the issue of "failure to instruct" for the first time on appeal.*

■ At trial, Green failed to request an instruction requiring the jury to return unanimous verdicts on rape and kidnapping. Further, he did not assign as error the trial court's failure to give such an instruction or to provide the necessary verdict forms. The State contends the failure to give an instruction cannot be challenged as error on appeal where, as here, there was no timely request. *State v. Rhinehart*, 92 Wn.2d 923, 602 P.2d 1188 (1979); *State v. Fagalde*, 85 Wn.2d 730, 539 P.2d 86 (1975); *State v. Perry*, 24 Wn.2d 764, 167 P.2d 173 (1946). While the State has properly expressed the general rule, this case falls within an equally well established exception. An appellate court will consider error raised for the first time on appeal when the giving or failure to give an instruction invades a fundamental constitutional right of the accused, such as the right to a jury trial. Const. art. 1, § 21; *State v. McHenry*, 88 Wn.2d 211, 213, 558 P.2d 188 (1977); *State v. Carothers*, 84 Wn.2d 256, 262, 525 P.2d 731 (1974). *See also State v. McDonald*, 74 Wn.2d 474, 480–81, 445 P.2d 345 (1968); *State v. Peterson*, 73 Wn.2d 303, 438 P.2d 183 (1968).

Green has standing to raise the issue of a failure to give the instruction and verdict in question.

B. *Whether jury unanimity is required on the elements of kidnapping and rape.*

Green was charged with aggravated murder in the first degree, a specific statutory crime provided in Initiative 316, § 1. Insofar as important here, unchallenged instruction No. 5 informed the jury that to convict one of aggravated murder in the first degree the jury must be convinced beyond a reasonable doubt that:

defendant caused the death of Kelly Ann Emminger *in the course of or in furtherance of rape* in the first degree or *kidnapping* in the first degree.

(Italics ours.)

The jury returned a unanimous general verdict finding Green "guilty of the crime of aggravated murder in the first

degree . . ." The verdict form did not provide for a separate jury determination on either of the two critical elements underlying the charge of aggravated first degree murder (*i.e.,* rape or kidnapping).

We agree with Green's contention that absent a separate unanimous verdict on *each* of the two critical elements of aggravated murder in the first degree, it is impossible to determine whether the jury found unanimously that he committed either rape or kidnapping or both.

In *Green* I, we mistakenly held it was not error to have instructed the jury in the alternative, requiring no unanimity as to the rape or kidnapping elements, citing *State v. Arndt,* 87 Wn.2d 374, 553 P.2d 1328 (1976). We stated:

> The statute involved in this case clearly describes a single offense. It is, however, one which can be committed in one or more ways, neither of which is repugnant to the other. This being so, the jury verdict was required to be unanimous as to the guilt of appellant for aggravated murder, so long as substantial evidence was presented to support each of the alternative circumstances or methods of committing it.

*State v. Green, supra* at 442. Our reliance on *Arndt* was largely dependent upon our conclusion that both the rape and kidnapping elements were supported by substantial evidence, a position we now reject insofar as the kidnapping issue is concerned. Our rejection of kidnapping leaves only rape as the remaining element. It is not possible to know whether the jury deemed that element established in the absence of some indication of jury unanimity on that critical issue. Clearly, *Arndt* is inapposite.

■■ We are also precluded from relying on *Arndt* for a more fundamental reason. In *Arndt,* we considered a statute which provided that a person could be convicted of grand larceny if he or she committed welfare fraud by any one of several overlapping and often indistinguishable methods. *State v. Arndt, supra* at 375. The methods were "closely related, connected acts which constitute[d] the single offense of fraudulently obtaining public assistance . . ."

*State v. Arndt, supra* at 382. In the instant case, however, the alternative ways of committing aggravated murder in the first degree are themselves separate and distinct criminal offenses. In order to convict a defendant of either kidnapping or rape, the State must prove every statutory element of that crime beyond a reasonable doubt to a unanimous jury. Where, as here, the commission of a specific underlying crime is necessary to sustain a conviction for a more serious statutory criminal offense, jury unanimity as to the underlying crime is imperative.

In the instant case, the jury instructions and verdict form did not require the jury to unanimously find appellant committed or attempted to commit either first degree kidnapping or rape or both. As instructed, it was possible for the jury to have convicted Green with six jurors resting their belief of guilt upon kidnapping and the other six resting their belief upon rape. Thus, it is impossible to know whether the jury unanimously decided that the element of rape had been established beyond a reasonable doubt.

It should also be observed that our reliance on *Arndt* was largely dependent upon our conclusion that both rape and kidnapping were supported by substantial evidence and thus were supportive of the combined verdict. As noted previously, in light of *Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979) and *Leonard v. California,* 443 U.S. 914, 61 L. Ed. 2d 878, 99 S. Ct. 3105 (1979) we applied an incorrect standard for the review of both elements. This severely undercuts any reliance upon *Arndt.* Having determined there is not sufficient evidence to support the kidnapping element, the cause must be remanded for new trial on the charge of aggravated murder in the first degree based on the element of first degree rape or attempted first degree rape.

C. *Ultimate disposition of the cause.*

In *Green* I we noted there was substantial evidence of rape and observed that even Green did not challenge the sufficiency of that evidence. Thus, the State suggests, that

since sufficient evidence exists to support the element of rape, there is no need to remand the cause for trial on aggravated murder in the first degree based solely on the element of rape. We do not agree.

Our unanimous observation in *Green* I was based on a standard of review since rejected by the United States Supreme Court in *Jackson v. Virginia, supra; Moore v. Duckworth,* 443 U.S. 713, 61 L. Ed. 2d 865, 99 S. Ct. 3088 (1979); and *Leonard v. California, supra.* Having employed an incorrect standard in *Green* I, our observation concerning sufficiency of the evidence of rape was, of course, faulty. Whether the element of rape or attempted rape may be proved beyond a reasonable doubt to establish aggravated first degree murder is first and foremost a jury question rather than one to be resolved by an appellate court.

In answer to appellant's motion for reconsideration, the State asserts, without supporting authority, the cause should not be remanded for new trial. It argues that the cause should be remanded for sentence on "the lesser included offense of murder in the first degree under RCW 9A.32.020 which offense was necessarily included in the charge, the instruction to the jury and the verdict in the instant case." We do not agree.

■ In the case at hand the jury was not instructed on the subject of a "lesser included offense". In general, a remand for simple resentencing on a "lesser included offense" is only permissible when the jury has been explicitly instructed thereon. *Based upon the giving of such an instruction* it has been held that the jury necessarily had to have disposed of the elements of the lesser included offense to have reached the verdict on the greater offense. *See State v. Jones,* 22 Wn. App. 447, 454, 591 P.2d 796 (1979); *State v. Martell,* 22 Wn. App. 415, 419, 591 P.2d 789 (1979); *State v. Liles,* 11 Wn. App. 166, 171–73, 521 P.2d 973 (1974); *see also People v. Codding,* 191 Colo. 168, 551 P.2d 192 (1976); *United States v. Thweatt,* 433 F.2d 1226, 1234 (D.C. Cir. 1970); *Austin v. United States,* 382 F.2d 129, 142 (D.C. Cir. 1967). In addition, it is clear a case may

be remanded for resentencing on a "lesser included offense" only if the record discloses that the trier of fact expressly found each of the elements of the lesser offense. *See State v. Jones, supra; see also State v. Jackson,* 40 Ore. App. 759, 596 P.2d 600, 602 (1979). Obviously, there is no such clear disclosure in this record. We have previously determined there was insufficient evidence to support the kidnapping element and that it is impossible to know whether the jury determined unanimously that the element of rape had been established beyond a reasonable doubt. Accordingly, we cannot say the jury found all the elements of the lesser included offense of first degree murder which is dependent upon proof of the crime of rape. Consequently, the cause cannot be remanded for sentencing on the lesser included offense of first degree murder.

The cause is remanded for new trial on the charge of aggravated murder in the first degree as it is impacted by the element of first degree rape or attempted first degree rape.[5]

HOROWITZ, HICKS, and WILLIAMS, JJ., concur.

UTTER, C.J. (concurring)—I join in the majority's analysis and holdings concerning the insufficiency of the evidence of first degree kidnapping in this case, the failure of the trial court to instruct on the subject of a unanimous verdict, and the equal protection issue. Accordingly, I believe the conviction must be reversed and the cause remanded for a new trial.

I also concur with the majority's rejection of appellant's *Miranda* claim, but reach this result with a different analysis. Appellant contends that the police questioning which resulted in his written statement was a "custodial interrogation" and therefore subject to the requirements of *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). The majority reaffirms

---

[5]*Green* I having declared unconstitutional the death penalty provisions of Initiative 316, that issue will not be resubmitted to the jury.

the *Green* I analysis of this claim, which concluded that the questioning was not a "custodial interrogation" because the police, at the time of the questioning, did not have probable cause to believe that Green had committed an offense. *See State v. Green,* 91 Wn.2d 431, 436–37, 588 P.2d 1370 (1979) (*Green* I). I find it necessary to reach an issue which the *Green* I majority did not explicitly address: the applicability and effect of the additional test of "custodial interrogation" which applies to circumstances in which the police do not have probable cause at the time of the questioning.

In *Miranda,* the United States Supreme Court declared that the requirements established in the decision apply to every "custodial interrogation." 384 U.S. at 444, 478–79. Thus, the threshold question in applying *Miranda* is whether the police questioning was an "interrogation" conducted in a "custodial" manner. *See Rhode Island v. Innis,* 446, P.2d 291, 297–302, 64 L. Ed. 2d 297, 305–08, 100 S. Ct. 1682 (1980); *Oregon v. Mathiason,* 429 U.S. 492, 50 L. Ed. 2d 714, 97 S. Ct. 711 (1977). The express police questioning which took place in this case was an "interrogation", *see Rhode Island v. Innis, supra* at 301, and therefore the critical issue is whether the interrogation was "custodial" for purposes of *Miranda.*

The United States Supreme Court explained in *Miranda* that "[b]y custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444. However, as we have observed in *State v. Creach,* 77 Wn.2d 194, 198–99, 461 P.2d 329 (1969), "[i]t is difficult to set forth an all–inclusive rule" defining the circumstances in which an individual has been "deprived of his freedom of action in [a] significant way" and is therefore entitled to the *Miranda* protections. The definition of "custodial" must be broad enough to protect all individuals whose freedom has actually been restricted in a significant manner, *see Oregon v. Mathiason, supra* at 495, and yet narrow

enough to allow the police to briefly restrict people's freedom of action in order to conduct the type of "[g]eneral on-the-scene questioning . . . or other general questioning of citizens" that is part of "the traditional function of police officers in investigating crime." *Miranda*, at 477; *see State v. Hilliard*, 89 Wn.2d 430, 436, 573 P.2d 22 (1977). The rule for determining whether an individual has been significantly deprived of his freedom must, moreover, involve objective criteria and not rest upon the police officer's subjective intention to deprive the defendant of his freedom, or the defendant's subjective belief regarding whether he was free to go. "The [United States Supreme] Court could scarcely have intended the issue whether the person being interrogated had 'been taken into custody or otherwise deprived of his liberty in any significant way' to be decided by swearing contests in which officers would regularly maintain their lack of intention to assert power over a suspect save when the circumstances would make such a claim absurd, and defendants would assert with equal regularity that they considered themselves to be significantly deprived of their liberty the minute officers began to inquire of them." *United States v. Hall*, 421 F.2d 540, 544 (2d Cir. 1969).

We held in *State v. Creach, supra,* that one objective criterion that will definitively classify an interrogation as "custodial" is the police officer's possession, at the time of the questioning, of probable cause to believe that the interrogated individual has committed an offense:

> [O]nce an investigating officer has probable cause to believe that the person confronted has committed an offense, the officer cannot be expected to permit the suspect to leave his presence. At that point, interrogation becomes custodial, and the suspect must be warned of his rights.

*Creach,* at 198; *accord, State v. Hilliard, supra* at 435–36. Since an officer possessing probable cause "cannot be expected to permit the suspect to leave his presence," the

probable cause factor provides objectively verifiable evidence that the interrogated individual in fact was not free to go. We simultaneously recognized in *Creach,* however, that other factors can demonstrate the deprivation of the defendant's freedom, and we specifically indicated that when the facts of the case are such that an interrogated individual would reasonably believe that he or she was not free to go, then the interrogation will be considered "custodial." *See Creach,* at 199; *accord, State v. Dennis,* 16 Wn. App. 417, 421–22, 558 P.2d 297 (1976). Such an assessment of whether an interrogated individual would reasonably believe that he or she was free to go, is similarly employed in other jurisdictions as a central standard for determining whether an interrogation is "custodial" for purposes of *Miranda. See, e.g., United States v. Curtis,* 568 F.2d 643, 646 (9th Cir. 1978); *Fisher v. Scafati,* 439 F.2d 307, 310 (1st Cir.), *cert. denied,* 403 U.S. 939, 29 L. Ed. 2d 719, 91 S. Ct. 2256 (1971); *People v. Arnold,* 66 Cal. 2d 438, 449, 426 P.2d 515, 58 Cal. Rptr. 115 (1967); *People v. Pugliese,* 26 N.Y.2d 478, 260 N.E.2d 499, 311 N.Y.S.2d 851 (1970).

The focus upon a defendant's reasonable belief reflects the policy considerations underlying *Miranda.* The United States Supreme Court has explained that the "concern of the Court in *Miranda* was that the 'interrogation environment' created by the interplay of interrogation and custody would 'subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self–incrimination." *Rhode Island v. Innis, supra* at 299; *see also United States v. Washington,* 431 U.S. 181, 187 n.5, 52 L. Ed. 2d 238, 97 S. Ct. 1814 (1977); *Oregon v. Mathiason, supra* at 495. By focusing upon whether the facts of the case are such that a defendant would reasonably believe that he or she was restrained of their freedom and not free to go, the definition of "custodial" interrogation effectuates the concern for the psychological impact which custody and restraint can have upon an interrogated individual.

In determining whether the interrogation in this case was "custodial," the *Green I* majority applied the probable cause test and concluded that the questioning was not a custodial interrogation under this test since the officers, at the time of the questioning, did not have probable cause to believe that appellant had committed the offense. *Green I, supra* at 436–37. The *Green I* majority, however, failed to then go on and consider whether the facts in this case are such that an interrogated individual would reasonably believe that he was under restraint and was not free to go. Prior case law in this jurisdiction and other jurisdictions, and the policies underlying *Miranda,* make it necessary to also consider the applicability and effect of this second criterion for assessing the "custodial" nature of an interrogation.

The record reveals that the police officers' questioning of appellant Green was not conducted in circumstances that would lead an interrogated individual to reasonably believe that he or she was under restraint and was not free to go. Green claimed to be an eyewitness to the commission of the killing by another individual, and he went entirely voluntarily to the police station in accordance with the routine police procedure of taking material witnesses to the station to record their statements. Although the police thoroughly questioned Green as to his knowledge of the offense and his observation of the assailant, they did not in any way indicate that they were questioning him as a suspect rather than as the eyewitness which he purported to be.

Since the interrogation in this case was not "custodial" under either the probable cause test or the test of examining a defendant's reasonable belief, the *Miranda* protections were not applicable to the challenged statements. The *Miranda* requirements only began to apply at the point at which the detective acquired probable cause to believe that Green had committed the offense, as a result of observing a suspiciously large blood stain on Green's undershorts and receiving a report that a person matching Green's description had been seen struggling with the victim. *See Green I,*

at 436–37. Accordingly, I join the majority's conclusion that the challenged statements were obtained in a permissible manner.

WILLIAMS, J., concurs with UTTER, C.J.

DOLLIVER, J. (concurring in the result)—While I agree with the result reached by the majority, I cannot concur with its view that our substantial evidence rule is somehow different from the standard expressed by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). Nor can I agree we must adopt the *Jackson* rule because of our language in *Green* I, *State v. Green,* 91 Wn.2d 431, 588 P.2d 1370 (1979).

The Supreme Court in *Jackson* stated, at page 319:

[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

The *Jackson* rule was adopted to replace the "no evidence" rule of *Thompson v. Louisville,* 362 U.S. 199, 4 L. Ed. 2d 654, 80 S. Ct. 624, 80 A.L.R.2d 1355 (1960). Under the no evidence rule, a conviction based upon a record wholly devoid of any relevant evidence of a criminal element of the offense charged is constitutionally infirm.

The court in *Jackson,* however, stated that the *court* is not required to "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Jackson,* at 318–19. This is exactly what we said in *Green* I, at page 443: "In determining whether the necessary quantum of evidence exists, it is unnecessary for the [reviewing] court to be satisfied of guilt beyond a reasonable doubt."

In *Jackson,* the United States Supreme Court, and in *Green* I, this court, both have said it is not the role of the *court* to be satisfied of the guilt of a defendant beyond a reasonable doubt. The question raised by the two cases is whether the substantial evidence rule as articulated in

*State v. Randecker,* 79 Wn.2d 512, 487 P.2d 1295 (1971), and followed in *Green* I, conflicts with the rational–trier–of–fact/beyond–a–reasonable–doubt rule of *Jackson.*

Justice Rosellini has clearly and succinctly demonstrated in his dissent that there is no distinction between the two rules. If, after an examination of the record, the reviewing court is "satisfied that there is 'substantial evidence' to support either the State's case, or the particular element in question" (*Randecker,* at 518), this is sufficient to meet the *Jackson* test that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* at 319. *See also People v. Johnson,* 26 Cal. 3d 557, 606 P.2d 738, 162 Cal. Rptr. 431 (1980), for a post–*Jackson* case in which the California Supreme Court upheld its "substantial evidence" rule as being "plainly consistent" with *Jackson.*

The view of the majority needlessly abandons the substantial evidence rule. We have never said the *Jackson* rule and the substantial evidence rule are different. We have said only that a rule requiring the reviewing court to be satisfied *itself* of guilt beyond a reasonable doubt is not the same as the substantial evidence rule. *The United States Supreme Court concurs.* We have not previously adopted the rule of the majority; neither has the United States Supreme Court, nor should we now.

ROSELLINI, J. (dissenting)—I see no reason to depart from the position which we took upon the first hearing of this case with respect to the sufficiency of the evidence. The majority is much concerned with the holding in *Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979), that a reviewing court must find sufficient evidence to justify the jury's finding that the State's case was proved beyond a reasonable doubt. I see no difference in substance between that test and the one which we have consistently applied. When we speak of "substantial evidence to support the verdict," we mean evidence to support a finding of guilt beyond a reasonable doubt, since that is what the jury's

verdict must reflect. Of course, this court need not decide that it agrees with the verdict, for the credibility of witnesses is a matter for the jury. But our test has always been that there must be substantial evidence which, if believed, would support a finding of guilt beyond a reasonable doubt. If a part of this test is implied rather than express, it nevertheless governs our disposition of the question.

As far as the evidence in this case is concerned, I believe that reasonable minds could find without a doubt that the defendant kidnapped the victim, as that term is defined in the statute. One of the definitions is: "'Abduct' means to restrain a person by . . . using . . . deadly force." RCW 9A.40.010(2). That is precisely what the defendant did in this case. There is no question that the victim was restrained. She was kicking and screaming when first observed by the witness, and later she was further restrained by deadly force. The statute does not say "deadly force other than killing the victim." The majority would have us believe that the statute makes it a crime to use deadly force only if that force does not result in the death of the victim. It would seem clear to me that the kind of actions engaged in by the defendant in this case are precisely the kind of actions which the legislature intended to punish under the kidnapping statute. If the kidnapping did not culminate in the death of the victim, the only crime would be kidnapping, first degree. If the victim died as a result of the defendant's actions, the crime would be kidnap–murder. That the crime of kidnapping would merge with that of murder if the latter were proven to the jury's satisfaction, *see State v. Johnson,* 92 Wn.2d 671, 600 P.2d 1249 (1979).

As I hope we made clear in that case, the commission of a lesser crime may be only incidental to a greater crime, but that does not make it any the less a crime, which is an aggravating factor in the greater crime. If the greater crime is proven, the lesser crime merges in it, but it does not for that reason lose its efficacy as an element of the greater offense.

The majority argues that every killing must be kidnapping, because it results in "restraint." Under that analysis every assault is a kidnapping, because it likewise results in a "restraint," albeit a lesser one. I would interpret the statute as requiring some showing that restraint was a purpose of the attack, as was evidently the case here, since the defendant had grabbed the victim and carried her away from the place in which he found her.

The majority says that the people intended Initiative 316 to identify those crimes which are particularly outrageous. I wonder how much further they should have us look to find facts which fit that description. I would imagine that the people who voted in favor of the initiative will be surprised indeed to learn that it does not apply to a case in which a man grabs a young child and carries her away, and who, when she begins to kick and scream, silences her by means of a knife. Whether he threatened her with the knife before he killed her, we cannot know, since she is not here to testify. In that case, the majority would approve a kidnap–murder conviction; also, I gather, if he had traveled another 100 feet with her before he found a place of possible hiding. I doubt that this law was intended to hinge on such technicalities.

If there was substantial evidence to support a finding beyond a reasonable doubt that the defendant killed the victim in the course of kidnapping her, as I believe there was, then the further contention treated in the majority opinion, that the verdict may have rested on a finding for which there was inadequate support in the evidence, has no merit.

I would adhere to our decision in *State v. Green,* 91 Wn.2d 431, 588 P.2d 1370 (1979).

WRIGHT and BRACHTENBACH, JJ., concur with ROSELLINI, J.

Reconsideration denied October 6, 1980.