[No. 22567–7–I. Division One. June 4, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. THOMAS FLOYD STEELE, *Appellant.*

*Patricia Novotny* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Al Shabino, Deputy,* for respondent.

PEKELIS, J.—Thomas Steele appeals convictions of first degree statutory rape and tampering with a witness. The charges were tried separately, pursuant to the trial court's granting of Steele's motion to sever counts, but have been consolidated on appeal.

Steele contends that there is insufficient evidence to support his conviction of first degree statutory rape. In the trial on the tampering charge, he appeals from a number of evidentiary and procedural rulings. He also contends that prosecutorial misconduct deprived him of a fair trial on the tampering count.

### FIRST DEGREE STATUTORY RAPE

Matt's mother met Tom Steele in late December 1979 at the Green River Community College, where the two attended classes and worked on the school newspaper together. In September 1984, she asked Steele if he would watch her son, Matt, in the mornings. Matt was then entering the second grade, and needed someone to look after him for an hour to an hour and a half each morning

before he left for school. Steele agreed to look after Matt for his mother.

Based on five incidents, described by Matt at trial, Steele was charged with five counts of statutory rape. Each count covered a specific period of time, and the jury was so instructed.[1]

Matt testified that the first incident occurred one morning toward the end of September 1984, when Steele called Matt into his bedroom and took Matt's clothes off. Steele then removed his own clothes, except for his shorts, and the two got into Matt's bed. Steele first touched Matt's penis with his hand. He then put his mouth to Matt's penis and asked Matt to do the same to him. Matt refused.

The second incident occurred the next morning. Steele woke Matt up and removed Matt's pajamas and his own pants. He touched Matt's penis and also "sucked on it again."

The third incident occurred about a week later, before Halloween. As before, Steele removed Matt's pajamas and his own clothes and got into bed with Matt. He again sucked on Matt's penis. On this occasion, Steele also asked Matt to rub Steele's penis. Matt did so until Steele ejaculated.

Matt could not remember precisely when the fourth incident occurred, but testified that it was before Thanksgiving. Matt testified that Steele "did what he usually did, basically." When asked to describe what Steele actually did, he testified that Steele hit his penis back and forth with his hand, but that Steele did not do anything else to his penis at that time.

The fifth incident occurred sometime before Christmas vacation. Steele woke Matt up, removed his clothes and got into bed with him. He put Matt against the wall and "put

---

[1]Count 1 covered the period of time from September 1, 1984, to September 28, 1984, count 2 September 29, 1984, to October 20, 1984, count 3 October 21, 1984, to November 9, 1984, count 4 November 10, 1984, to November 30, 1984, and count 5 December 1, 1984, to December 31, 1984.

his penis by [Matt's] rear end." When the prosecutor asked if Steele did anything else, Matt responded as follows:

Q. Did he do anything else? Did he touch your penis area?
A. Yeah, he did.
Q. Did he do things similar to what you described earlier?
A. Yes.

After this last incident, Matt told his mother that Tom had touched him and that he did not like it, but did not describe what happened in any further detail. Matt's mother testified that Matt informed her he did not need or want a baby–sitter any longer, and that she then decided to discontinue using Steele as a baby–sitter for Matt. She had no reason to believe there was any other reason for Matt's request that Steele stop baby–sitting him.

Matt did not talk to anyone else about what had happened until February 1987, when he told his older brother, Chris. As a result of this disclosure, CPS initiated an investigation and Steele was eventually charged and tried on five counts of statutory rape.

The jury acquitted Steele of counts 1 through 4 and convicted him of count 5. Steele appeals his conviction on this count, contending that there is insufficient evidence to support the conviction.

Steele argues that Matt's testimony on count 5 that Steele did "things similar" to what had occurred earlier is insufficient to show that Steele had oral sexual contact with Matt in December, the charging period for count 5. Steele also argues that Matt's testimony that Steele put his penis by Matt's buttocks is not evidence of actual sexual contact.

The State concedes that this latter testimony is insufficient to support Steele's conviction. However, the State contends that the jury could infer that Matt was referring to oral sexual contact when he testified that Steele did "things similar" to what he had done before.

At the times relevant to this case, first degree statutory rape was defined as follows:

A person over thirteen years of age is guilty of statutory rape in the first degree when the person engages in sexual intercourse with another person who is less than eleven years old.

RCW 9A.44.070(1).[2] "Sexual intercourse" includes oral sexual contact:

(1) "Sexual intercourse" (a) has its ordinary meaning and occurs upon any penetration, however slight, and

. . . .

(c) Also means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.

RCW 9A.44.010(1).

 The question before this court is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980). In order to satisfy this standard there must be *some* evidence that oral intercourse occurred during the charging period for count 5 to support Steele's conviction for that count. Thus, the issue here is whether Matt's testimony in relation to count 5 that Steele did "things similar" to what Matt had described earlier constitutes sufficient evidence of oral intercourse. If not, the jury could not reasonably have found Steele guilty of statutory rape.

 Matt did describe specific acts of oral intercourse when he recounted the first three incidents of sexual abuse. However, he also described acts which were sexual in nature but did not amount to sexual intercourse, such as the masturbation incident.

Moreover, the sufficiency of the evidence on count 5 is further put in question by reference to Matt's testimony regarding count 4. In describing the fourth incident, Matt testified in a general way that Steele "did what he usually

---

[2]RCW 9A.44.070 was repealed in 1988 and replaced by RCW 9A.44.073.

did, basically." Yet, when in a follow–up question he was asked to describe what Steele actually did, Matt stated only that Steele hit his penis back and forth with his hand, not that he committed acts constituting sexual intercourse. In fact, when asked if Steele did anything else to his penis at that time, he answered "no." Thus, it is clear that the phrase "did what he usually did" was *not* understood by Matt as referring back to prior acts of oral intercourse.

Several things become clear from these facts. First, when Matt testified that Steele "did what he usually did", he was *not* referring to acts of oral intercourse. It follows from this that Matt likewise could very well have understood "things similar" to mean *some* sexual conduct, but not necessarily sexual intercourse.

In addition, "things similar to what you described *earlier*" most probably refers to the last "thing" described. The most recent incident "described earlier" was Matt's recounting of the incident relating to count 4 which indisputably did *not* involve any conduct amounting to sexual intercourse. Thus, the jury would have to simply ignore the incident described in count 4 in order to decide that Matt understood "things similar to what you described earlier" as referring to the events surrounding counts 1 through 3.

Finally, even if Matt were referring to counts 1 through 3, those incidents also involved some sexual conduct which did *not* amount to oral intercourse. For these reasons, we conclude that the testimony that Steele did "things similar to what he did before" is too ambiguous to allow a jury to conclude that Matt meant acts constituting sexual intercourse.

A conviction of statutory rape cannot be sustained on this record. Given the equivocal nature of the evidence on count 5, the jury's finding that Steele committed statutory rape in count 5 is pure conjecture. The jury could not have found beyond a reasonable doubt that "things similar" referred to oral intercourse. *See Green,* 94 Wn.2d at 221. We therefore reverse Steele's conviction on count 5.

The remaining issues on appeal do not warrant publication. None warrant reversal of Steele's conviction for tampering with a witness. *See* RAP 2.06.040; CAR 14.

WINSOR and FORREST, JJ., concur.