IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36782-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN BRADLEY RAYMOND, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, A.C.J. — John Raymond appeals from a conviction for attempting to elude, arguing that the evidence was insufficient and that the court erred in declining to give a definitional instruction. We affirm the conviction.

FACTS

The charge arose after an exceptionally brief midnight pursuit in Yakima County. Deputy Justin Paganelli was working traffic patrol, travelling south on North Wenas Road operating his radar. An oncoming northbound vehicle approached him at 78 m.p.h. in a 40 m.p.h. zone. He turned on his overhead lights and then turned his car in pursuit of the speeding vehicle, which appeared to increase its speed. The radar continued to show 78 m.p.h. before the deputy estimated the speeder reached 100 m.p.h. on a straight stretch of road.

The deputy testified that there were numerous places where the vehicle could have safely pulled over. The pursuit, which lasted 26 seconds, ended when the speeder braked suddenly and skidded sideways into a driveway, nearly hitting a fence. The driver turned off his lights and continued driving up the driveway before stopping. The deputy followed and arrested the driver, John Raymond.

Mr. Raymond testified in his own defense that he drove to see how fast his Chevy Malibu could go. He topped out at 130 m.p.h. that night, but had slowed down before he encountered the officer. He did not see the officer's lights until he was in his driveway.

The defense sought an instruction defining the word "immediately." The court declined to give the instruction, reasoning that it was not relevant to the defendant's theory of the case. The defense argued the case to the jury based on Mr. Raymond's testimony that he did not know the officer was pursuing him. The jury, nonetheless, convicted him of eluding a pursuing police vehicle. The court imposed a standard range sentence of 15 days.

Mr. Raymond timely appealed to this court. A panel considered his case without hearing argument.

## ANALYSIS

Mr. Raymond argues that the evidence was insufficient to support the jury's verdict and that the trial court erred by failing to give his proposed instruction. We address the contentions in that order.

2

*Sufficiency of the Evidence*

Mr. Raymond contends that the prosecution failed to establish that he drove in a reckless manner or that he failed to immediately stop the vehicle. Properly viewed, the evidence permitted the jury to find those elements.

Review of this contention is in accord with long settled standards. Evidence is sufficient to support a verdict if the trier-of-fact has a factual basis for finding each element of the offense proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980). The evidence is viewed in the light most favorable to the prosecution. *Green*, 94 Wn.2d at 221. Appellate courts defer to the trier-of-fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

The crime of eluding is defined in RCW 46.61.024(1):

> Any driver of a motor vehicle who willfully fails or refuses to *immediately bring his or her vehicle to a stop* and who *drives his or her vehicle in a reckless manner* while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens.

(Emphasis added.)

"To operate a motor vehicle in a reckless manner means to drive in a rash or heedless manner, indifferent to the consequences." Clerk's Papers at 14.

3

Emphasizing that speed alone cannot constitute reckless driving and that the incident was over so rapidly, Mr. Raymond contends that the State did not prove its case. He overly simplifies the facts.

The incident took place in the middle of a dark night on a winding, rural road with a 40 m.p.h. speed limit. There were various curves that required vehicles to slow, as well as other roads connecting to North Wenas Road. There also were places to pull over and stop safely. Mr. Raymond also had to make a hard stop and turn to enter his driveway, sliding as he did so. A jury could conclude that traveling at nearly double the speed limit under those conditions constituted driving in a reckless manner.

Similarly, there was evidence that there were places that Mr. Raymond safely could have pulled over and stopped in response to the deputy's signal to do so. Although his trial defense was that he did not know that he needed to stop, he now argues that the State failed to prove that he was capable of stopping sooner than his slide into his own driveway. There was no need to prove more than what the State did prove—that there were locations where a driver could have pulled off the road prior to where Mr. Raymond did so. The State's obligation in this regard is not governed by how out of control the driver was.

The evidence permitted the jury to conclude that the mad midnight dash constituted an effort to evade the officer. It was sufficient to allow the jury to conclude Mr. Raymond was attempting to elude Deputy Paganelli.

4

No. 36782-7-III
*State v. Raymond*


*Immediately Instruction*

Mr. Raymond also argues that the trial court erred in refusing to define the word "immediately" for the jury. The trial court correctly concluded that the instruction was not necessary.

Long-standing principles govern our review of jury instruction questions. Trial courts have an obligation to provide instructions that correctly state the law, are not misleading, and allow the parties to argue their respective theories of the case. *State v. Dana*, 73 Wn.2d 533, 536-537, 439 P.2d 403 (1968). The instructions must set forth the elements of the crimes that are before the jury. *State v. Allen*, 101 Wn.2d 355, 358, 678 P.2d 798 (1984). There is no need to define those elements that are commonly understood. *Id*. However, when the elements have technical definitions, the definitional instruction must be given when requested. *Id*. at 358, 361-362. Ordinary words and self-explanatory ones need not be defined. *State v. Brown*, 132 Wn.2d 529, 611-612, 940 P.2d 546 (1997). Typically, courts are afforded broad discretion in the wording of jury instructions. *Petersen v. State*, 100 Wn.2d 421, 440-41, 671 P.2d 230 (1983).

The word "immediately" is not a technical term that requires a definition; it means stopping as soon as possible. *State v. Sherman*, 98 Wn.2d 53, 57, 653 P.2d 612 (1982). Similarly, the term "immediate flight" is self-explanatory and does not need an instruction. *Brown*, 132 Wn.2d at 612-613. Nothing about the word "immediate" requires judicial explanation.

5

In addition, the absence of the instruction was of no moment to the defense of this case. Mr. Raymond testified that he did not know the deputy was signaling him to stop. The timeliness of his stopping was irrelevant to this case where both sides agreed that Mr. Raymond did not stop as a result of the deputy signaling to do so. The trial court correctly determined that the definition was unnecessary.

The court did not err in rejecting the proposed instruction.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, A.C.J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.