143 P.3d 606 (2006)
STATE of Washington, Respondent,
v.
Guy Henry WASHINGTON, Appellant.
No. 53511-1-I.
Court of Appeals of Washington, Division 1.
August 14, 2006.
Publication Ordered September 19, 2006.
*607 Nancy P. Collins, Washington Appellate Project, Seattle, Guy Henry Washington, Bkg. # 206012312, Kent RJC Jail, Kent, Counsel for Appellants.
Deborah A. Dwyer, King Co Pros Ofc/Appellate Unit, Seattle, Counsel for Respondents.
PER CURIAM.
¶ 1 After several violent encounters involving his wife, Guy Washington was convicted *608 of numerous crimes. He contends the evidence was insufficient to support his convictions for unlawful imprisonment and one count of violation of a no-contact order. We reject these contentions and affirm the convictions. In light of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and State v. Hughes, 154 Wash.2d 118, 110 P.3d 192 (2005), we remand for resentencing. We also remand for correction of a clerical error on the judgment and sentence.

FACTS
¶ 2 While visiting friends, Washington and his wife Harmoni entered into a heated argument. Harmoni was seven months pregnant at the time. One of the friends, concerned for her, phoned Harmoni's mother, who contacted police.
¶ 3 Federal Way police officers Crawford and Hatfield arrived at the residence and found Washington and Harmoni standing beside a disabled vehicle in the driveway. Harmoni was visibly upset and appeared to be on the verge of crying. Her face was red and swollen, and there were red marks on each side of her throat. Officer Crawford took photographs of her injuries.
¶ 4 Harmoni initially denied anything was wrong. But soon afterward, she described assaultive and abusive conduct, explaining that she originally said nothing happened because she was afraid of Washington. Harmoni told Officer Crawford that Washington became extremely upset during their visit and asked her to accompany him outside. They walked to the car, and Washington ordered Harmoni to get inside. She left the door open, apparently further enraging Washington, who ordered her to shut the door. She attempted to leave, but Washington grabbed her clothing, pulled her into the vehicle, and punched her in the stomach, causing her to buckle over in pain and eventually vomit. He then reached over and pulled the door shut. He straddled her, placed his hands around her neck, and started squeezing. Just when Harmoni thought she would lose consciousness, Washington released his grip and moved off her. He told her to put her head against a door window so that he could break her jaw, then hit her face with his open hand and slammed her head against the window. He told her she had "disrespected" him for the last time, and that he was going to "really fuck her up." Report of Proceedings (Oct. 30, 2003) at 15. At some point, Harmoni surreptitiously mouthed "help me" to her friend, who called police. Harmoni signed a domestic violence report detailing these events.
¶ 5 Police also obtained several eyewitness statements generally consistent with Harmoni's account. Washington was taken into custody and charged with assault in the third degree, unlawful imprisonment, and felony harassment.
¶ 6 On March 25 2003, the superior court issued an order prohibiting Washington from having any contact, either "directly or indirectly, in person, in writing, or by telephone, personally or through any other person with" Harmoni for a period of three years, and informing him that he could "be arrested and prosecuted even if the person protected by this order invites or allows you to violate this order's prohibitions." Exhibit 9. The no-contact order, which was signed by Washington, further advised him: "You have the sole responsibility to avoid violating this order's provisions." Id.
¶ 7 On April 8, 2003, Harmoni visited Washington in jail, apparently not for the first time. Authorities interrupted the visit after about 10 minutes, telling Harmoni and Washington that there was a no-contact order in place and that Washington was violating the terms of that order. Over the next week or so, Washington arranged to speak with Harmoni by phone on at least 10 occasions.
¶ 8 Washington was thereafter charged by amended information with one count of assault in the second degree (domestic violence), one count of unlawful imprisonment (domestic violence), one count of misdemeanor harassment (domestic violence), 11 counts of felony violation of a court order (domestic violence), and one count of witness tampering.
¶ 9 At the jury trial, Harmoni recanted. She testified she lied to police, and that *609 Washington never forced her into the car or prevented her from leaving. She acknowledged that Washington had a history of domestic violence, but denied that he hit or threatened her on the day in question. She also testified that her apparent injuries were not caused by Washington, saying she was ill and tended to bruise easily. Other witnesses, however, testified that Washington yelled at Harmoni to shut the car door and when she didn't, he hit her in the stomach, pulled her completely inside the car, and shut the door, that they were in the vehicle for at least 10 minutes, and one witness heard "smacks" while they were in the car. Several photographs of Harmoni were admitted into evidence. Others testified about Washington's efforts to contact Harmoni from jail.
¶ 10 The jury found Washington guilty of third degree assault, unlawful imprisonment, misdemeanor harassment, and 11 counts of felony violation of a no-contact order.
¶ 11 At sentencing, the court imposed an exceptional sentence of 120 months, arrived at by running sentences on several counts consecutively. The court found three grounds for the exceptional sentence under RCW 9.94A.535: (1) Harmoni's pregnancy, (2) a pattern of physical and psychological abuse, and (3) an unscored misdemeanor history, resulting in a sentence that was clearly too lenient. This appeal followed.

DISCUSSION
¶ 12 Washington first contends, and the States concedes, that the judgment and sentence incorrectly states that Washington was convicted of second degree assault when in fact the jury convicted him of third degree assault. We have reviewed the record and agree with the parties that this clerical error must be corrected.
¶ 13 Washington next challenges the sufficiency of the evidence to convict him of violating a no-contact order when Harmoni visited him in the jail. Due process requires the State to prove all elements of the crime beyond a reasonable doubt. State v. Aver, 109 Wash.2d 303, 310, 745 P.2d 479 (1987). In reviewing a challenge to the sufficiency of the evidence, the test is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980). "When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992).
¶ 14 As charged here, the crime of willful violation of a court order has three essential elements: "the willful contact with another; the prohibition of such contact by a valid no-contact order; and the defendant's knowledge of the no-contact order." State v. Clowes, 104 Wash.App. 935, 944, 18 P.3d 596 (2001). Willfulness requires a purposeful act. State v. Sisemore, 114 Wash.App. 75, 78, 55 P.3d 1178 (2002). "[N]ot only must the defendant know of the no-contact order; he must also have intended the contact." Clowes, 104 Wash.App. at 944-45, 18 P.3d 596.
¶ 15 Washington contends his contact with Harmoni at the jail was not willful. He points out that "since he was in jail and unable to control whom he saw or how long a visit lasted, the violation of the no-contact order was not the result of his willful behavior," noting that "the jail would not permit [Harmoni] to visit if there was a no-contact order." Appellant's Brief at 13, 14.
¶ 16 This argument fails for several reasons. To begin with, nothing indicates that Washington was aware of the jail policy at the time he had contact with Harmoni. There was a valid court order prohibiting Washington from having contact with Harmoni, issued only a few weeks before and signed by Washington. Nor was their contact accidental. Harmoni testified to almost daily visits to the jail, ending only when interrupted by jail staff. This was sufficient evidence to allow a reasonable jury to convict Washington of willful violation of the order. See Sisemore, 114 Wash.App. at 78, 55 P.3d 1178 (defendant violated the no-contact order "if he knowingly acted to contact or continue contact after an original accidental contact.").
*610 ¶ 17 Washington next challenges the sufficiency of the evidence of unlawful imprisonment. A person commits unlawful imprisonment if "he knowingly restrains another person." RCW 9A.40.040(1). To restrain someone is to restrict their movements "without consent and without legal authority in a manner which interferes substantially with [her] liberty." RCW 9A.40.010(1). A substantial interference is a "`real' or `material' interference with the liberty of another as contrasted with a petty annoyance, a slight inconvenience, or an imaginary conflict." State v. Robinson, 20 Wash.App. 882, 884, 582 P.2d 580 (1978), aff'd, 92 Wash.2d 357, 597 P.2d 892 (1979). The presence of a means of escape may help to defeat a prosecution for unlawful imprisonment unless "the known means of escape ... present[s] a danger or more than a mere inconvenience." State v. Kinchen, 92 Wash.App. 442, 452 n. 16, 963 P.2d 928 (1998).
¶ 18 Washington contends he did not substantially interfere with his wife's freedom of movement. Relying on State v. Green, 94 Wash.2d 216, 616 P.2d 628 (1980), he argues that any interference was merely incidental to the ongoing assaults, and cannot support a separate charge of unlawful restraint. In Green, the defendant stabbed a young girl on the sidewalk of her apartment complex and dragged her around the back of the building, where he left her in a stairwell. The Supreme Court held there was insufficient evidence of the aggravating factor of kidnapping because Green's acts of moving and restraining the victim were merely incidental to and not independent of the murder. Green, 94 Wash.2d at 226-27, 616 P.2d 628.
¶ 19 The facts here are not similar. Washington ordered Harmoni into the car. She got in, but left the door open. He told her to shut the door. She tried to leave, but he grabbed her by her clothes and pulled her back inside. Clearly, she was restrained. He then assaulted her by punching her in the stomach, choking her, and hitting her head against the window.
¶ 20 Washington chiefly contends his restraint of Harmoni was merely incidental to his assaults upon her. But while Washington was already upset, the evidence indicates that the assaults on Harmoni were acts of rage triggered by her brief act of independence in leaving the car door open.[1] In other words, the assaults were a reaction to Harmoni's resistance to the restraint. The evidence thus supports the conclusion that the restraint was not merely incidental to the assaults.
¶ 21 Washington next argues that imposition of consecutive sentences violated his constitutional right to have a jury determine all the facts necessary to support an exceptional sentence, under recent decisions in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and State v. Hughes, 154 Wash.2d 118, 110 P.3d 192 (2005).
¶ 22 The sentencing court imposed an exceptional sentence by ordering concurrent sentences for the third degree assault and unlawful imprisonment, to run consecutively to concurrent sentences on the 11 counts of felony violation of a no-contact order, for a total of 120 months of confinement. That is twice as long as the term of total confinement had all the sentences been concurrent.
¶ 23 For Washington's offenses, multiple current sentences are presumptively to be concurrent, and may be consecutive only under "the exceptional sentence provisions of RCW 9.94A.535." RCW 9.94A.589(1)(a). Washington's sentence was therefore an exceptional sentence.
¶ 24 In Blakely, the United States Supreme Court reiterated that "`[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" Blakely, 542 U.S. at 301, 124 S.Ct. 2531 (quoting Apprendi, 530 U.S. *611 at 490, 120 S.Ct. 2348). The Court also held that the statutory maximum means the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, without additional fact-finding by the judge. Id. at 303, 124 S.Ct. 2531. "When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts `which the law makes essential to the punishment,' and the judge exceeds his proper authority." Id. at 304, 124 S.Ct. 2531 (quoting 1 J. BISHOP, CRIMINAL PROCEDURE § 87 at 55 (2d ed. 1872)).
¶ 25 One basis for the exceptional sentence here was that Washington's unscored criminal history rendered the standard sentence clearly too lenient, which is a substantial and compelling reason for imposing an exceptional sentence under the statute. Former RCW 9.94A.535(2)(j) (2003). Our Supreme Court has ruled that the clearly too lenient conclusion is a factual determination and must be made by the jury. State v. Hughes, 154 Wash.2d 118, 140, 110 P.3d 192 (2005).
¶ 26 The State contends the holding in Hughes is not controlling because, unlike Blakely and Hughes, the sentences here were exceptional only in that they were imposed consecutively rather than concurrently. The State relies on State v. Cubias, 155 Wash.2d 549, 556, 120 P.3d 929 (2005), in which the Washington Supreme Court held that the imposition of consecutive sentences for two or more serious violent offenses do not offend Blakely. But in Cubias, the sentences were required to be consecutive, because the crimes were serious violent offenses. RCW 9.94A.589(1)(b). The sentence was thus simply mandated by statute, and the trial court decided no facts before imposing it. The Cubias court was not confronted, as we are, with a consecutive sentence imposed as an exceptional sentence under subsection (1)(a).
¶ 27 The two subsections differ in both purpose and effect. Section (1)(b) mandates consecutive sentences for "two or more serious violent offenses arising from separate and distinct criminal conduct." As a consequence, a defendant who commits multiple serious violent offenses "has no right to serve concurrent sentences." Cubias, 155 Wash.2d at 555, 120 P.3d 929. Conversely, subsection (1)(a) establishes the presumption that for other offenses, sentences for current offenses will be concurrent. To depart from this presumption and sentence multiple current offenses consecutively, a trial court must find a proper aggravating factor. See former RCW 9.94A.535.
¶ 28 Where multiple current offenses are involved, an exceptional sentence may be accomplished either by lengthening the concurrent sentences or by imposing consecutive sentences. No distinction is made in the Sentencing Reform Act between the two alternatives. "[I]f an aggravating factor does not support an exceptional sentence in the form of lengthened concurrent sentences, it will not support an exceptional sentence in the form of consecutive sentencing." State v. Batista, 116 Wash.2d 777, 791, 808 P.2d 1141 (1991).
¶ 29 Cubias contains broad language suggesting that Blakely and Apprendi are not offended by any consecutive sentence. Whether the sweeping language in Cubias will serve to narrow the holdings of Hughes and Batista is an issue presented in a case currently pending before the Supreme Court, In re Personal Restraint of Van Delft, No. 77733-1. Because Hughes was decided under subsection (1)(a) whereas Cubias was not, at this time Hughes and Batista constitute the more directly applicable precedent.
¶ 30 The aggravating factors found by the trial court here required judicial fact-finding and violated Washington's Sixth Amendment right to a jury trial as defined in Blakely. Accordingly, we vacate the sentences and remand for concurrent sentencing.[2]
¶ 31 Washington also has filed a statement of additional grounds for review, arguing that gruesome photographs of Harmoni were improperly admitted into evidence. But because those photographs have not been included *612 as part of the record on appeal, the issue has not been properly preserved. Even if we were inclined to reach the issue, we review the trial court's admission of gruesome photographs for abuse of discretion. State v. Crenshaw, 98 Wash.2d 789, 806, 659 P.2d 488 (1983). Given Harmoni's trial testimony, the photographs were highly probative to show the true nature of her injuries. Washington has not established that the trial court abused its discretion by admitting the photographs.
¶ 32 We affirm Washington's convictions for unlawful imprisonment and violation of a no-contact order, but remand for resentencing.
NOTES
[1] We reject Washington's argument that Harmoni was not restrained because she had a means of escape. See Kinchen, 92 Wash.App. at 452, n. 16, 963 P.2d 928. The fact that the car was inoperable and the doors were not locked does not mean Harmoni had a means of escape, given that when she tried to leave the car in the first place, Washington physically forced her back inside.
[2] In view of our disposition, we need not reach Washington's other bases for challenging his exceptional sentence.