# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49595-3-II |
| Respondent, | |
| v. | |
| MARIE E. STOUT, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Marie E. Stout appeals her assault of a child in the second degree conviction, arguing she was denied her due process rights because the State failed to prove all essential elements of the offense. She also alleges the sentencing court erred by ordering her to potentially forfeit seized property. We affirm Stout's conviction but remand for correction of the judgment and sentence.

## FACTS

Stout and her nine-year-old daughter, K.S., got into an altercation at the home of Stout's friend, Alison Varian. A neighbor called the police.

Kitsap County Sheriff's Deputy Yul Louch observed marks on K.S.'s neck and scratches on her body. Photographs showed a scratch mark on K.S.'s collarbone, scratches on her lower abdomen, and redness on her neck. Kitsap County Sheriff's Deputy Jason Bell described the neck

marks as appearing to be "handprints" that were the "size of an adult." 2 Report of Proceedings (RP) at 170-71.

Varian's husband, Brian Hillerman, arrived home and observed K.S. coming out of the garage. She "seemed frantic" and was breathing hard. 2 RP at 244. K.S. told Hillerman that her mom had choked her. After that, K.S. called her father, who arrived and picked up K.S. and her brother. Back at his home, K.S.'s father, who is a nurse, looked over K.S. and observed "bruising around the neck." 3 RP at 274.

K.S. stated that on the night in question, she went into the kitchen for something to eat. She observed her mother looking in the refrigerator and K.S. asked what she was doing. Stout responded, "eff you." 3 RP at 291. K.S. got angry at her mother and told her mother to stop. Stout became angry and "grabbed [K.S.'s] neck and pushed [her] into the fridge." 3 RP at 292. Stout continued to hold K.S.'s neck and started squeezing. K.S. described the neck grab as "[k]ind of tight." 3 RP at 294. K.S. could breathe a little but there was pressure; "it was kind of hard to breathe because it was tight, kind of." 3 RP at 294. Stout held K.S's throat for 30 to 50 seconds.

K.S. escaped Stout's grasp and ran to the front door. Stout caught up with her and again grabbed K.S. by the neck. K.S. again escaped. After more chasing around the house, Stout again caught up with K.S. and "kind of" got on top of her and began "choking" her. 3 RP at 301. This squeezing hurt and made it hard for K.S. to breath; K.S. was only able to breathe "a tiny bit." 3 RP at 302. She felt like blood was rushing to her head like she was hanging upside down. Stout persisted alternately releasing her hands and then putting her hands back on K.S.'s neck and squeezing. Stout released K.S. and as K.S. tried to stand up, Stout grabbed her hair and repeatedly slammed her head to the floor. K.S. ultimately broke free and ran outside.

Stout's version differed from K.S.'s.  Stout claimed to not be angry with her daughter but grabbed K.S. to console her because K.S. was upset.  Stout testified that K.S. tried to pull away from her, causing the two to fall backwards to the ground.  Stout testified she had no recollection of ever putting her hands on K.S.'s neck.

The State charged Stout with assault of a child in the second degree based on strangulation with a domestic violence special allegation.[1]  The jury found Stout guilty as charged.  Stout appealed.

## ANALYSIS

I.    SUFFICIENCY OF EVIDENCE

Stout first contends she was denied her due process rights because the State failed to prove all elements of assault in the second degree of a child based on strangulation beyond a reasonable doubt.  We disagree.

"Due process requires the State to prove all elements of the crime beyond a reasonable doubt." *State v. Washington*, 135 Wn. App. 42, 48, 143 P.3d 606 (2006).  Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, it allows any rational trier of fact to find all of the elements of the crime charged beyond a reasonable doubt.  *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).  A defendant claiming insufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn from that evidence.  *Salinas*, 119 Wn.2d at 201.  When reviewing the

---

[1] The State also charged Stout with driving under the influence of alcohol and a jury convicted her, but Stout does not appeal this conviction.

sufficiency of the State's evidence, we consider circumstantial evidence and direct evidence as equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting witness testimony, witness credibility, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

To convict Stout of second degree assault of a child, the State had to prove beyond a reasonable doubt the relevant elements that she (1) assaulted K.S. (2) by strangulation or suffocation. RCW 9A.36.021(1)(g). The trial court instructed the jury accordingly. Stout challenges the sufficiency of evidence supporting the second element. RCW 9A.04.110(26) defines "'strangulation'" as "to compress a person's neck, thereby obstructing the person's blood flow or ability to breathe, or doing so with the intent to obstruct the person's blood flow or ability to breathe."

The State presented sufficient evidence from which any reasonable jury could find that Stout strangled K.S. Several witnesses observed red marks on K.S.'s neck. Moreover, K.S. testified that her mother was angry with her and "grabbed [K.S.'s] neck" and started to squeeze. 3 RP at 294. K.S. described the neck grab as "[k]ind of tight." 3 RP at 294. K.S. could breathe a little, but "it was kind of hard to breathe because it was tight, kind of." 3 RP at 294. Stout held her throat for 30 to 50 seconds.

K.S. testified that Stout chased her around the home, repeatedly grabbing K.S. by the neck when she caught up to her. At one point, Stout got on top of K.S. and began "choking" her. 3 RP at 301. This squeezing hurt and made it hard to breath; K.S. was only able to breathe "a tiny bit." 3 RP at 302. K.S. felt like blood was rushing to her head like she was hanging upside down. K.S.

broke free and ran outside. Hillerman came home at that moment and observed K.S. was breathing hard. The jury was also presented with photographic evidence showing bruising on K.S.'s neck. This was sufficient evidence from which any reasonable jury could infer that Stout compressed K.S.'s neck and either actually obstructed her ability to breathe or acted with the intent to obstruct her ability to breathe.

While Stout provided conflicting testimony, it was solely within the jury's province to determine the credibility of Stout's conflicting testimony on this point. Accordingly, we conclude that because sufficient evidence supports Stout's conviction of second degree assault of a child by strangulation, the State met its burden and Stout was not denied her due process rights.

II.     FORFEITURE BOX ON JUDGMENT AND SENTENCE

Stout next argues that the sentencing court erred by checking a box on the judgment and sentence ordering Stout to "Forfeit all seized property subject to forfeiture under RCW 9.41.098 or RCW 69.50.505." Clerk's Papers at 144. Because there is nothing in our record to show there was any property seized or the sentencing court's intent to order forfeiture and because the State concedes there was no property to be seized, the checked box is a clerical error. The remedy for a clerical error in a judgment and sentence is to remand to the trial court for correction. *State v. Makekau*, 194 Wn. App. 407, 421, 378 P.3d 577 (2016). We, therefore, remand for correction of the judgment and sentence.

We affirm Stout's conviction but remand for correction of the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Maxa, A.C.J.

Johanson, J.