IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80239-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DUSTIN NEAL CLINTON, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

ANDRUS, A.C.J. — Dustin Clinton appeals his conviction for felony violation of a no contact order, arguing the State failed to prove that he knowingly violated the order. We disagree and affirm his conviction.

FACTS

In July 2016, Bothell Municipal Court entered a no contact order ("Bothell NCO") against Clinton for the protection of P.K, Clinton's girlfriend. The order, effective for a period of five years, prohibited Clinton from having any contact with P.K., except by telephone for child welfare issues pertaining to their six-year-old daughter. The Bothell NCO further prohibited Clinton from being within 1,000 feet of P.K. According to P.K., the judge in the Bothell court case indicated she might be willing to lift the NCO "when [Clinton] was in treatment." In a paragraph entitled,

Citations and pin cites are based on the Westlaw online version of the cited material.

"Warning," the Bothell NCO notified Clinton that "[o]nly the court can change the order upon written application."

In October 2018, Clinton was convicted in Snohomish County Superior Court of felony violation of a domestic violence court order. Clinton was sentenced to 90 days in jail under a First Time Offender Waiver and placed on community custody for 12 months. The sentencing court ordered Clinton to participate in a certified domestic violence treatment program and to undergo a chemical dependency evaluation. Paragraph 4.2 of the judgment and sentence contained a condition that he "shall have no contact with [P.K.], unless it is approved by treatment provider." Paragraph 4.5 reiterated this prohibition on contact with P.K.: "[t]he defendant shall not have [contact with [P.K.], except as permitted by treatment providers, including but not limited to, personal, verbal, telephonic, written or contact through a third party until 10-23-2019 . . . ." It stated in capitalized letters that "ONLY THIS COURT CAN CHANGE THIS ORDER." Id.

In March 2019, Washington State Trooper Christopher Reed-Simpson stopped a car for a defective brake light. Clinton was driving the car and P.K. was in the passenger seat. Clinton told Trooper Reed-Simpson that there was an NCO and that P.K. was the protected party. Trooper Reed-Simpson confirmed that there was an active NCO from the Bothell Municipal Court that prohibited Clinton from being within 1,000 feet of P.K. He arrested Clinton for violating the Bothell NCO.

During his arrest, Clinton pleaded with Trooper Reed-Simpson not to arrest him.[1] Clinton told Trooper Reed-Simpson that there was a "new order" from superior court allowing him to have contact if he was in counseling. Trooper Reed-Simpson confirmed that there were two separate no contact orders relating to Clinton and P.K., one from Bothell and one from Everett. Clinton asked him to "look at the order" and he would see that Clinton was permitted to have contact. But Trooper Reed-Simpson found no provision in the Bothell NCO relating to treatment providers permitting contact.

The jury convicted Clinton of felony violation of a no contact order. The court, finding substantial and compelling reasons justifying a downward departure from the sentencing guidelines, sentenced Clinton to 28 months in prison. Clinton appeals.

## ANALYSIS

Clinton argues that the State failed to prove beyond a reasonable doubt that he knowingly violated the NCO. He contends that, at the time of his arrest, he did not knowingly violate his Bothell NCO because he believed the Snohomish Superior Court judgment had modified it to allow him contact with P.K. with permission from his treatment provider. We disagree and hold that a rational trier of fact, viewing evidence in light most favorable to the State, could conclude beyond a reasonable doubt that Clinton knowingly violated the NCO.

---

[1] Dash cam video and video footage taken of Clinton while seated in the backseat of Trooper Reed-Simpson's patrol car, admitted at trial, recorded Clinton's statements to the trooper. P.K. and Trooper Reed-Simpson both testified at trial. Clinton did not testify.

Evidence is sufficient to support a conviction if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. State v. Longshore, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). When reviewing whether the State presented sufficient evidence to support a conviction, we interpret all reasonable inferences from the evidence in the State's favor. State v. Hosier, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). We consider direct and circumstantial evidence as equally reliable. State v. Varga, 151 Wn.2d 179, 201, 86 P.3d 139 (2004). Issues regarding conflicting testimony, the credibility of witnesses, and the persuasiveness of evidence are for the trier of fact and not subject to review. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

To prove felony violation of a no contact order, the State had to prove (1) there was a no contact order applicable to Clinton, (2) he knew of the existence of this order, (3) he knowingly violated a provision of the order, (4) he had been previously convicted twice of violating provisions of a court order, and (5) his act occurred in Washington. RCW 26.50.110(5).

Clinton does not contest the fact that he violated the Bothell NCO. He challenges the evidence only as to whether he did so knowingly. But evidence is sufficient to establish a "knowing violation" if the State proves the defendant knew the order existed and knowingly had contact with P.K. State v. Sisemore, 114 Wn. App. 75, 78, 55 P.3d 1178 (2002). See also State v. Washington, 135 Wn. App. 42, 49, 143 P.3d 606 (2006) (there are three essential elements to the crime of willful violation of court order: "the willful contact with another; the prohibition of

such contact by a valid no-contact order; and the defendant's knowledge of the no-contact order") (quoting State v. Clowes, 104 Wn. App. 935, 944, 18 P.3d 596 (2001)).

The evidence was sufficient here for a rational trier of fact to conclude beyond a reasonable doubt that Clinton had purposeful contact with P.K., the contact was prohibited under the Bothell NCO, and Clinton knew the Bothell NCO existed. The Bothell NCO bears Clinton's signature indicating he had received a copy of it. P.K. testified she was aware of the Bothell NCO's existence. P.K. also testified that the judge in the Bothell case refused to lift that order unless Clinton was in treatment. The Bothell NCO explicitly states that the order can only be modified by the court "upon written application." This evidence was sufficient to prove Clinton was aware of the terms of the Bothell NCO and its lack of any provision allowing a treatment provider to modify its terms.

The evidence is also sufficient to demonstrate Clinton's contact with P.K. was purposeful. P.K. testified she drove to Clinton's home, hung out with him for a while, and then the two decided to drive to a nearby convenience store to buy milk. Trooper Reed-Simpson recounted Clinton's statement to him that "he wanted to be honest" and revealed that "he had a no-contact order out against him, and the protected party was the female in the passenger's seat." Clinton admitted to the trooper that the car belonged to P.K., he was merely using it, and P.K. was in the car because she needed a ride.

Finally, the evidence was sufficient to establish that Clinton's contact with P.K. violated the Bothell NCO. Trooper Reed-Simpson testified that when he

pulled Clinton over, the two were seated in the car less than 1000 feet apart, contact prohibited by the Bothell NCO. He also confirmed there was nothing in the Bothell NCO that permitted contact if Clinton was in treatment.

Clinton argues that he did not knowingly violate the Bothell NCO because he thought his contact was permitted under the terms of a subsequent superior court judgment and sentence. But the jury was free to reject this contention as unreasonable in light of the terms of the Bothell NCO, the jury instructions, and the circumstantial evidence relating to Clinton's state of mind when questioned by Trooper Reed-Simpson.

Clinton argues that statements he made during his arrest show he believed he was not violating the NCO. At one point during his arrest, Clinton asked Trooper Reed-Simpson to check the order to confirm he was permitted contact with P.K. with counselor approval. P.K. also testified at trial that she believed Clinton was in treatment and that he was permitted to have contact with her. During his arrest, however, Clinton also made statements to indicate that he knew he was not permitted to have contact and that he had not yet received the necessary permission from his treatment provider.[2] These statements, as well as P.K.'s testimony, however, raise issues of credibility, which we will not review on appeal. Thomas, 150 Wn.2d at 874-75. We thus defer to the jury in the persuasiveness of any statements Clinton made to Trooper Reed-Simpson.

It is undisputed that the Bothell NCO contained no provision allowing Clinton's in-person contact with P.K. The face of the NCO itself warned Clinton

---

[2] Clinton states: "I know that we are not supposed to have contact." And: "once my counselor approves, that I am allowed to have contact with her."

- 6 -

that only a court could change the order and the request had to be made in writing. The Snohomish County Superior Court judgment and sentence contained a similar warning, notifying Clinton that only the court could modify its terms.

The instructions also informed the jury that:

> Evidence has been introduced that there was a separate order entered in Snohomish County cause no. 17-1-03281-31. The Snohomish County Superior Court judgment and sentence did not modify, change, or invalidate the Municipal Court order at issue in this case. This evidence may be considered only insofar as it may relate to the Defendant's state of mind, and for no other purpose.

The jury was aware that Clinton's only defense was that he thought his contact was permissible because of the existence of the superior court order's provision allowing contact if "permitted" or "allowed" by a treatment provider. And they had the ability to assess the reasonableness of this defense when evaluating all of the evidence presented, including video of his interactions with Trooper Reed-Simpson.

Jury Instruction nine, based on RCW 9A.08.010(1)(b), provided:

> [a] person . . . acts knowingly . . . with respect to a fact, circumstance, or result when he is aware of that fact, circumstance, or result. It is not necessary that the person know that the fact, circumstance, or result is defined by law as being unlawful or an element of a crime.

> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted . . . to find that he or she acted with knowledge of that fact.

> When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

Because Clinton received a copy of the Bothell NCO, the jury could conclude that Clinton had information about its clear terms, namely that the Bothell NCO, on its face, allowed only the court to change its terms. From this information, the jury

could further conclude that a reasonable person in his situation would believe that, despite the Snohomish Superior Court judgment, Clinton was still prohibited from being within 1,000 feet from P.K. Finally, knowing the Bothell NCO had not been changed, the jury could conclude that Clinton's intentional contact with P.K. was a knowing violation of a court order.

We conclude that the State presented sufficient evidence to prove beyond a reasonable doubt that Clinton knowingly violated the NCO.

We affirm his conviction.

Andrus, A.C.J.

WE CONCUR:

Bowman, J.                    Chun, J.