IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37921-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CASEY A. EVENSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Casey Evenson appeals her conviction for first degree custodial interference and challenges the criminal filing fee imposed as a cost. We reject her arguments that the State's evidence was insufficient and that her trial lawyer provided ineffective counsel when he failed to move for dismissal at the close of the State's case. She does not demonstrate that it was error to impose a criminal filing fee as a term of her sentence, but since the State joins in her request that it be struck, we grant that request for relief. We affirm the conviction and remand with directions to strike the criminal filing fee.

FACTS AND PROCEDURAL BACKGROUND

Casey Evenson and Timothy Evenson are divorced parents of two young children. The final parenting plan entered in January 2020 in connection with their divorce provides that the children are scheduled to live with Ms. Evenson except when they are

scheduled to live with Timothy.[1]  When the plan was proposed and ordered, Ms. Evenson

and the children lived with Ms. Evenson's grandmother in Reardan.

The plan, a form document with boxes to be checked and blanks to be filled in by

the parties, specifies that the children are scheduled to live with Timothy on

"WEEKENDS . . . ☒ every other week . . . from (day)  Thursday  at  0:300  p.m. to

(day)  Sunday  at  0:700  p.m." Ex. 1, at 6.  After entry of the plan, the parents were able

to follow it without dispute for several months.  On the alternating weeks when the

children were scheduled to live with Timothy, he would typically pick them up on

Thursday in Reardan and return them on Sunday.

The first diversion from the parenting plan occurred on the weekend of April 9-12,

2020, which the parties agree was Timothy's weekend.  He was moving that weekend,

however, and asked Ms. Evenson to keep the children.  She agreed.  His understanding of

the parenting plan was that he "forfeited" that weekend and was not entitled to "make [it]

up" the following weekend (April 16-19), which he viewed as Ms. Evenson's weekend.

Report of Proceedings (RP) at 78-79.

A day or two before his Thursday pickup for the weekend of April 23-26, Timothy

contacted Ms. Evenson and told her he had reserved a room at a motel in North Spokane

for the visit.  This was to prevent exposing his immunocompromised father to the

---

[1] Given the common last names, this opinion refers to Timothy Evenson by his first name for clarity.  No disrespect is intended.

2

COVID-19 virus. Ms. Evenson objected to the plan, telling Timothy that she believed the motel where he planned to stay was unsafe. Notwithstanding her objection, Timothy drove to Reardan on April 23 to pick up the children, only to find they were not there. He filed a complaint with law enforcement that day, and was contacted by Reardan Police Chief Andrew Manke about being denied visitation. When Chief Manke contacted Ms. Evenson on April 24 to get her response to the complaint, she told him that Timothy was not entitled to visitation that weekend under the parties' parenting plan.

The parties' dispute over visitation on the April 23-26 weekend proved to be the first of continuing disagreements. It turned out Ms. Evenson had taken the children to Oregon on the April 23-26 weekend, and she told Timothy that future pickups would have to take place in Kennewick. Despite his efforts, Timothy was unable to see his children again until Father's Day, June 21, 2020.

In the meantime, on May 13, 2020, the Lincoln County prosecutor charged Ms. Evenson with committing custodial interference in the first degree "on or about April 23, 2020." Clerk's Papers (CP) at 1. She was found indigent and was appointed counsel. The case proceeded to trial. Ms. Evenson defended on the basis that she reasonably took the children to Oregon during the April 23-26 charging period because it was not Timothy's weekend under the parenting plan.

The State called only two witnesses at trial. Timothy was its first. He testified consistent with the facts recounted above, telling jurors that the only reason Ms. Evenson

3

gave him for denying him visitation on the weekend of April 23-26 was because he planned to take the children to the motel.

The State's other witness was Chief Manke.  He testified to receiving Timothy's complaint on April 23 and that he reviewed the parenting plan the following day with Timothy and then called Ms. Evenson.  He testified that Ms. Evenson stated to him at that time that she was in Oregon with her boyfriend and "it wasn't Tim's weekend—to have the kids, and that he'd gone weeks without asking to seek the kids or even seeing the kids."  RP at 67.  He testified that she also said she had not received enough notice from Timothy for the visit.  In a follow-up call that Chief Manke made to Ms. Evenson a few days later, she told him she was still in Oregon and would be there another week because she had entered a nursing program and was trying to get licensed as a nurse in Oregon.

Asked when cross-examined whether Ms. Evenson told him why she did not believe April 23-26 was Timothy's weekend, Chief Manke testified he would have to re-read his notes,

> But I believe that—the way the parenting plan is written, every other weekend is vague because if they miss a weekend do they get—the immediately next weekend or they have to wait two weeks is not in here. So, she—presumably meant that it wasn't Tim's weekend because of that.

RP at 71.

In the defense case, Ms. Evenson testified on her own behalf.  In her direct examination, she testified that when Timothy asked her to keep the children on his April

4

9-12 weekend, her understanding was that his next visitation was "[n]ot that next weekend but the weekend after. Unless I decided to forfeit my weekend so he could make up his weekend." RP at 78-79. She persisted in that position when provided with a calendar and asked about it again by her lawyer:

> Q And (inaudible) every other weekend visitation, if you had the 12th,—
>
> A If I had them the 9th through the 12th, because he didn't, on his weekend, then he wouldn't have them again until the 23rd through the 26th, was my understanding.

RP at 79.

Having received two answers from Ms. Evenson that were unhelpful to the defense case, defense counsel moved on to other topics. She only touched on the April 23-26 weekend one more time, shortly before the lunch break, when she asked Ms. Evenson the following question to which she received the following answer:

> Q Did you tell Chief Manke that the weekend of the 23rd was not Tim's weekend[?]
>
> A Yes, Ma'am.

RP at 88.

Cross-examination took place after the lunch break. When cross-examined, Ms. Evenson reiterated that April 9-12 was Timothy's weekend, which he missed because of his move. Contrary to her earlier testimony, however, she testified that Timothy "should have had [the children] that next weekend," meaning April 16-18. RP at 94. The prosecutor reminded her of her earlier testimony:

Q      That was not what you said on direct examination. In fact you said that April 16th was not his weekend.

A      Technically it's not, it would have been my weekend. But because he forfeited his weekend he would have got (inaudible) that weekend—if he contacted me.

Q      That is not what you said during direction examination; is that right? The—

A      (Inaudible) I was confused.

Q      You said on direct examination that you weren't going to give up your weekend, which was April 16th, in order to (inaudible).

A      I said I would give up my weekend if I was contacted for him to make up (inaudible) weekend. If I'm not contacted then I'm not—(inaudible), if he can't contact me (inaudible).

. . . .

Q      . . . So you expected to hear from him on April 23rd.

A      No. I expected to hear from him that next weekend, and when I did not, then—if I don't hear from him then I don't—it's not responsibility (inaudible). It's his responsibility to contact me to set up time (inaudible)—

Q      That's not what I'm asking. I'm asking—you expect to hear from him on the 23rd.

A      Yes. I expected to hear from him the weekend after to see if he was going to take the kids for the following weekend, because he missed the weekend before. When I did not then I expected him to contact me that next weekend because it was his weekend.

RP at 94-95.

On redirect, Ms. Evenson reiterated that she believed April 23-26 was her weekend. Asked by her lawyer, "do you believe your parenting plan is confusing?," Ms. Evenson answered yes, adding that the parenting plan has "lots of gray areas and it's very hard to interpret what I'm supposed to do and what I'm not supposed to do." RP at 99.

6

The State recalled Timothy and Chief Manke as rebuttal witnesses, to counter Ms. Evenson's testimony that Timothy did not try to schedule visits after the April 23-26 weekend.

The jury found Ms. Evenson guilty as charged. She appeals.

ANALYSIS

Ms. Evenson assigns error to the sufficiency of the evidence, to ineffective assistance of counsel, and to the imposition of a $200 criminal filing fee. We address the alleged errors in turn.

I.   THE STATE PRESENTED SUFFICIENT EVIDENCE THAT TIMOTHY HAD THE "LAWFUL RIGHT TO TIME WITH THE CHILDREN" DURING THE CHARGING PERIOD

Due process requires the State to prove all elements of a crime beyond a reasonable doubt. *State v. Washington*, 135 Wn. App. 42, 48, 143 P.3d 606 (2006). It is an element of the crime of first degree custodial interference, reflected in the jury instructions, that the defendant take, entice, retain or conceal her children from the other parent "*having the lawful right to time with the children pursuant to a court order making residential provisions for the children.*" CP at 19 (emphasis added); RCW 9A.40.060(2). Ms. Evenson challenges the sufficiency of the State's evidence to prove that Timothy had the lawful right to time with the parties' children on the weekend of April 23-26 because, she contends, the parenting plan is ambiguous.

7

The test for sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). In a criminal case, an insufficiency claim "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.* Substantial evidence means evidence in the record of a sufficient quantity to persuade a fair-minded, rational person of the truth of the finding. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Certainly it cannot be said that the plan is ambiguous as a matter of law. It speaks of the children being "scheduled" to live with Ms. Evenson except when they are "scheduled" to live with Timothy every other week at prescribed times. Ex. 1, at 6. The transitive verb "schedule" is defined to mean "**1 :** to appoint, assign, or designate for a fixed time[,] **2 a :** to place in a schedule[,] **2 b :** to make a schedule of." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/schedule (last visited Nov. 12, 2021). The implication is that Timothy's weekends are fixed, consistent with his understanding that a weekend can be missed and forfeited, but that missing the weekend does not reverse his week-on, week-off schedule. Ms. Evenson is unable to point to any language in the plan that makes a wholesale change in the parties' assigned weekends any time a single weekend's visitation is changed.

8

It would be *possible* for the parties to have a different, shared understanding of what happened if Timothy missed a weekend's visitation, but that would be a question of fact for the jury. The State presented substantial evidence that the parties did not understand the plan to have a different meaning.

Timothy provided clear testimony about how he and Ms. Evenson had historically interpreted and followed the plan leading up to the failed visit. The jury could find that Ms. Evenson's claim of a contrary understanding was not credible from several things: the jurors' own reading of the parenting plan and Timothy's cogent testimony about its meaning; evidence that when Ms. Evenson was contacted by Timothy a couple of days in advance of the April 23-26 weekend, she did not tell *him* it was not his weekend; evidence that Timothy's visitation on the April 23-26 weekend failed for other real reasons (Ms. Evenson had taken the children to Oregon) or claimed reasons (the objectionable motel); and Ms. Evenson's contradictory and ultimately unreasonable explanation of her understanding of the parenting plan.

After hearing the testimony and reviewing the parenting plan, rational jurors could find beyond a reasonable doubt that Timothy had the lawful right to time with the children during the April 23-26 charging period. The State's evidence was sufficient.

II.   MS. EVENSON DOES NOT DEMONSTRATE INEFFECTIVE ASSISTANCE OF COUNSEL

Ms. Evenson's second assignment of error is that if the evidence of her guilt was sufficient only because of the damaging testimony she gave in the defense case, then she

was prejudiced when her trial lawyer failed to move to dismiss at the close of the prosecution's case-in-chief.

To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness, and that counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If a defendant fails to establish one prong, we need not consider the other. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

Generally, the failure to seek dismissal of the charges may constitute ineffective assistance of counsel if the motion to dismiss would have been granted. *State v. Johnston*, 143 Wn. App. 1, 18, 177 P.3d 1127 (2007); *see In re Pers. Restraint of Davis*, 152 Wn.2d 647, 711, 101 P.3d 1 (2004). A motion to dismiss would not have been granted nor could defense counsel reasonably expect such a motion to be granted. Contrary to the premise of Ms. Evenson's argument, her damaging testimony in the defense case was not the State's only sufficient evidence. While her testimony arguably strengthened the State's case, other sufficient evidence had already been presented. As summarized above, it included the parenting plan and Timothy's cogent testimony about its meaning, evidence that Ms. Evenson did not assert a belief that it was not Timothy's

10

weekend when contacted by him a couple of days prior, and evidence that Timothy's

visitation on the April 23-26 weekend failed for other real or claimed reasons.

Ineffective assistance of counsel is not shown.

III.    WE ACCEPT THE STATE'S CONCESSION TO THE REQUEST TO STRIKE THE CRIMINAL
        FILING FEE

Finally, Ms. Evenson assigns error to the trial court's imposition of a $200

criminal filing fee, which she argues cannot be imposed on a party who has been

determined to be indigent following 2018 amendments to RCW 10.01.160(3) and RCW

36.18.020(2)(h).  LAWS OF 2018, ch. 269, §§ 6, 17.  She points out that the changes

became effective on June 7, 2018, and were held in *State v. Ramirez*, 191 Wn.2d 732,

749, 426 P.3d 714 (2018), to apply prospectively to cases pending on direct appeal.

Br. of Appellant at 24.

Ms. Evenson's case was not pending on direct appeal on June 7, 2018.  She was

not even charged until 2020 and was sentenced in November 2020.  The statutory

limitations on which she relies had been in effect for well over two years by that time.

The trial court announced its decision to impose the criminal filing fee at sentencing, *see*

RP at 159, and any objection to the fee could and should have been raised at that time.

As recognized by our Supreme Court in *State v. Blazina*, appellate courts normally

decline to review issues raised for the first time on appeal, including challenges to legal

financial obligations.  182 Wn.2d 827, 834-35, 344 P.3d 680 (2015).  And not every

indigent defendant is exempt from the criminal filing fee; only those who are indigent "as defined in RCW 10.101.010(3)(a) through (c)." RCW 10.01.160(3); RCW 36.18.020(2)(h). The record on appeal does not reveal whether Ms. Evenson's indigency qualified.

That said, the State does not contest Ms. Evenson's challenge to imposition of the fee and even asks that her request for relief be granted. Since the change to the judgment and sentence is merely ministerial, we accept the State's concession.

The conviction is affirmed and the case is remanded for a ministerial striking of the criminal filing fee.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Siddoway, J._

Siddoway, J.

WE CONCUR:

_Pennell, C.J._

Pennell, C.J.

_Staab, J._

Staab, J.